UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **CHAMEKA WASHINGTON o/b/o D.L.W.** | * | **CIVIL ACTION NO.  12-0325** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner of Social Security's denial of disability insurance benefits.  The appeal was referred to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

## Background

On August 7, 2009, Chameka Washington protectively filed an application for Supplemental Security Income (SSI) benefits on behalf of her minor son, D.L.W. (claimant), who was born in May 1998.  (Tr. 106-108, 133).[1]  Washington alleged that her son has been disabled since January 1, 2005, because of hyperactivity, an inability to remember or focus, and Attention Deficit Hyperactivity Disorder ("ADHD").  (Tr. 116).  The claim was denied at the initial stage

---

[1] The court refers to the minor by his initials in accordance with LR 5.82W and the E-Government Act of 2002.

of the administrative process. (Tr. 67-72).[2] Accordingly, plaintiff requested and received a March 31, 2010, hearing before an Administrative Law Judge ("ALJ"). (Tr. 50-66). By decision dated September 27, 2010, the ALJ determined that the claimant was not disabled under the Act. (Tr. 9-23). Plaintiff appealed the adverse decision to the Appeals Council. On December 7, 2011, however, the Appeals Council denied the request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On January 31, 2012, Washington sought review before this court. She alleges the following errors:

> 1)   the ALJ's finding that D.L.W. has a "less than marked" limitation in the domain of acquiring and using information is not supported by substantial evidence;
>
> 2)   the ALJ's credibility determination is not supported by substantial evidence; and
>
> 3)   the Appeals Council erred by failing to remand the matter to the ALJ for consideration of newly submitted evidence..

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Brown*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant

---

[2] A prior application was denied at the stage agency level on April 21, 2008. (Tr. 134). There is no indication that it was further appealed. *Id*.

evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson*, 402 U.S. at 401. While substantial evidence lies somewhere between a scintilla and a preponderance, it contemplates "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

## Law

On August 22, 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub.L. 104-193, 110 Stat. 2105, which amended 42 U.S.C. §1382c(a)(3). Pursuant to this law, a child under the age of eighteen is considered disabled for purposes of SSI benefits if "that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I) (1997).

The regulations set forth a three-step process for a child seeking benefits. First, the ALJ must determine if the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924. If the child is not so engaged, then the ALJ determines whether the child has a medically determinable impairment(s) that is severe. *Id*. An impairment(s) will not be deemed severe if it constitutes a "slight abnormality or a combination of slight abnormalities that causes no more than minimal

functional limitations." *Id.*  Finally, an impairment(s) that is severe also must meet, equal, or functionally equal a listed impairment.  *Id.*

Under the regulations, an impairment is functionally equivalent to a listed impairment if it results in an extreme limitation in one domain of functioning or marked limitations in two domains.  20 C.F.R. § 416.926a.(a).  When assessing functional limitations, the Commissioner considers all relevant factors including, but not limited to:

1) How well [the claimant] can initiate and sustain activities, how much extra help [the claimant] need[s], and the effects of structured or supportive settings;

2) How [the claimant] function[s] in school; and

3) The effects of [the claimant's] medications or other treatment.

20 C.F.R. § 416.926a(a) (internal citations omitted).

The Commissioner considers the claimant's functional activities in terms of six domains:  (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being.  20 C.F.R. § 416.926a(b).

An "extreme" limitation is assessed when the impairment(s) interferes very seriously with the claimant's ability to independently initiate, sustain, or complete activities.  20 C.F.R. §416.926a(e)(3).  Day-to-day functioning may be seriously limited when the impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities.  *Id.*  An "extreme" limitation is equivalent to standardized test scores that are at least three standard deviations below the mean.  *Id.*  "Extreme" limitation, however, does not necessarily mean a complete lack or loss of ability to function.  *Id.*

The term "marked" may be established when a claimant's impairments seriously interfere

with the claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2). "Marked" limitation also refers to a limitation that is more than "moderate," but "less than extreme." *Id*. A "marked" limitation is equivalent to standardized test scores that are at least two, but less than three standard deviations below the mean. *Id*.

## Discussion

The ALJ determined that D.L.W. had not engaged in substantial gainful activity since the alleged onset date. (Tr. 15-16). He further found that D.L.W. suffers from Attention Deficit Hyperactivity Disorder ("ADHD") – an impairment that is severe. *Id*. The ALJ concluded, however, that this impairment neither met nor medically equaled a listed impairment. *Id*. Accordingly, he proceeded to consider whether D.L.W.'s impairment functionally equaled a listed impairment.

In so doing, the ALJ determined that D.L.W. suffered less than marked limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others. (Tr. 17-20). He further found that the claimant had no limitations of functioning in the three remaining domains. (Tr. 20-23). Because the claimant did not have at least two "marked" limitations or one "extreme" limitation of functioning, the ALJ concluded that D.L.W. did not have an impairment that functionally equaled any of the impairments listed in Appendix 1, Subpart P, of Regulation No. 4. (Tr. 23).

Plaintiff does not contest the ALJ's determination that D.L.W.'s impairment(s) do not meet or medically equal a listed impairment. In fact, at least initially,[3] she does not contest the ALJ's determination as to five of the six functional domains. Rather, she contends that the ALJ

---

[3] *See* discussion, *infra*.

erred by finding that D.L.W. had less than a marked impairment in the domain of "acquiring and using information," when, instead, he should have assigned an "extreme" limitation in this domain.

In support of her argument, plaintiff primarily emphasizes D.L.W.'s poor grades in most all of his subjects, and the findings of an April 20, 2010, initial evaluation by Pupil Appraisal Services at D.L.W.'s school. Although D.L.W. received an A in conduct for the 2010 school year, he received Fs in reading, mathematics (as modified for individual needs), science, and social studies. (Tr. 26). He also received a D in English and a C in spelling. *Id*. It was noted that he needed to attend and pass summer school LEAP. *Id*.

As to the report by Pupil Appraisal Services, the court notes that it reflects that D.L.W.'s general health was good, and that his ADHD was treated with Concerta. (Tr. 29-36). D.L.W.'s teacher noted that he behaved well and got along well with his peers. *Id*. However, he had developed a lackadaisical attitude towards his homework, possibly due to frustration. *Id*. Upon observation, D.L.W. was very attentive in class. *Id*. He was alert to class procedures, and had all of his materials readily available. *Id*. He experienced a good relationship with his teacher, and raised his hand for assistance when necessary. *Id*. Overall, D.L.W. appeared adequately adjusted in his school and home environments. *Id*.

Plaintiff stresses that D.L.W. achieved significantly below average results on functional capacity tests administered by the school assessment team. For instance, on February 5, 2010, D.L.W. took the Wechsler Individual Achievement Test-Second Edition (WIAT-II), and obtained a composite score of 74, which is characterized as borderline. (Tr. 29-36). However, the mean

score for the WIAT-II is 100, with a standard deviation of 15.[4]  Thus, because D.L.W.'s composite score was less than two standard deviations below the norm, it indicates that his limitations were less than marked.  20 C.F.R. § 416.926a(e)(2).

D.L.W. also obtained a composite score that placed him in the 12th percentile rank on the Kaufman Brief Intelligence Test – Second Edition ("KBIT-2").  *Id*.  Again, however, this score is less than two standard deviations below the norm, and thus, reflects a less than marked impairment.  *See e.g.*, http://www.johnswank.com/Understanding%20Measurements.htm (discussing standard deviations on test scores) (last visited on December 7, 2012).

The school assessment concluded that although D.L.W. had a medical diagnosis of ADD/ADHD, he demonstrated no characteristics of impulsivity, inattention, distractibility, or hyperactivity consistent with the diagnosis.  *Id*.  Rather, D.L.W.'s scores met the criteria for Specific Learning Disability.  *Id*.  Accordingly, the school intended to place him in special education classes.

Plaintiff further emphasizes that on April 7, 2010, D.L.W.'s teacher, Ms. Bray, completed a questionnaire wherein she rated D.L.W. as having "serious problems" in several activities relevant to the domain of acquiring and using information.  (Tr. 200).  Ms. Bray, however, did not rate any of them as "very serious."  *Id*.  According to the Commissioner's Program Operations Manual System ("POMS") the ratings on the teacher questionnaire, Form SSA-5665-BK, do not translate directly into the ratings used on the Childhood Disability Evaluation Form, SSA-538.  *See* POMS DI 25205.030(5).  There is no formula for converting the teacher

---

[4] *See e.g.*, http://www.johnswank.com/Understanding%20Measurements.htm (discussing standard deviations on test scores) (last visited on December 7, 2012).

questionnaire ratings into domain ratings. *Id*.[5] The questionnaire provides extremely useful information about the claimant's day-to-day functioning, but must be considered in conjunction with other record evidence. *Id*. When the questionnaire is considered together with the assessment testing (the WIAT-II and the KBIT-2), it is manifest that D.L.W. has a significant deficiency in the domain of acquiring and using information. Nonetheless, the objective testing confirms that D.L.W.'s functional loss in this domain is less than marked.[6]

With regard to the domain of attending and completing tasks, Ms. Bray indicated that D.L.W.'s difficulties were less than serious, *i.e.*, they ranged from obvious problems to no problems at all. (Tr. 201). Moreover, D.L.W.'s teacher indicated that she did not observe D.L.W. to experience any problems in the four remaining domains. (Tr. 202-206).

On March 30, 2010, D.L.W.'s assistant principal wrote that D.L.W. maintains an A in conduct in the classroom, and appears to have no problems with friends. (Tr. 195).

Further support for the ALJ's determination may be found in a Childhood Disability Evaluation Form completed on August 7, 2009, by non-examining agency psychologist, Julia Doolin, Ph.D. (Tr. 188-194). She indicated that D.L.W. had less than marked functional limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating to others. *Id*. She further opined that he had no limitation of functioning in the three remaining domains. *Id*.

---

[5] The teacher's responses cannot be added up or otherwise mechanically converted into functional limitations. *Id*.

[6] To the extent that the teacher's assessment could be interpreted to support a marked limitation in the domain of acquiring and using information, that still would not undermine the ALJ's decision, because functional equivalence requires marked limitations in at least two domains.

Plaintiff further argues that the ALJ erred when he determined that the hearing testimony was less than "fully credible." (Tr. 16-17). When assessing credibility, the ALJ is required to consider the objective medical evidence, the claimant's statements, the claimant's daily activities, and other relevant evidence. SSR 96-7p. The ALJ also must consider inconsistencies in the evidence and conflicts between the claimant's statements and the remainder of the evidence. 20 C.F.R. § 404.1529(c)(4). However, the ALJ need not follow formalistic rules in his credibility assessment. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

The ALJ documented in his decision that

> [i]n testimony at the hearing, the child stated he had repeated the second and third grades. He stated his grades were sometimes good and sometimes not good. He stated he gets along well with h[is] teacher and peers. His mother stated the school had decided to put the child in special education. She stated his grades were "C's" and "D's" in conduct. She stated he has ADD, but no physical problems. She stated his medication helps him.

(Tr. 17). The ALJ then noted that the testimony could not be found fully credible and proffered reasons for same. *Id*. The court observes, however, that the testimony that the ALJ found not fully credible is unremarkable and not materially inconsistent with the ALJ's decision. The testimony merely confirms what the record already reflects, *i.e.*, that D.L.W. experienced academic problems. Therefore, any error was harmless. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (procedural perfection in administrative proceedings is not required); *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (ALJ's omission does not require remand unless it affected claimant's substantial rights).

To the extent that it could be argued that the ALJ's rationale for declining to fully credit plaintiff's hearing testimony also tainted his impression of other evidence submitted by plaintiff,

9

*e.g.*, the function reports completed by plaintiff and D.L.W.'s grandmother, the court observes that the ALJ's credibility determination was influenced by the findings of the state agency psychologist, Dr. Doolin. (Tr. 17). He determined that her assessment was well-supported. *Id*. In short, the ALJ's analysis satisfied the requirements of 20 C.F.R. § 404.1529, and his resolution is supported by substantial evidence. *See Undheim v. Barnhart*, 214 Fed. Appx. 448 (5th Cir. Jan. 19, 2007) (unpubl.) (opinion as a whole gave sufficient reasons and documentation for the ALJ's credibility determination); *Cornett v. Astrue*, 261 Fed. Appx. 644 (5th Cir. Jan. 3, 2008) (unpubl.) (ALJ gave some weight to claimant's complaints; thus claimant's arguments that his subjective complaints were not given enough weight is unavailing); *Hernandez v. Astrue*, 2008 WL 2037273 (5th Cir. May 13, 2008) (unpubl.) (despite claimant's subjective allegations of pain, the ALJ gave "greatest weight" to treating physician's opinion).

In her final argument, plaintiff contends that the Appeals Council erred by failing to remand the matter to the ALJ for consideration of newly submitted evidence. Here, the Appeals Council issued its rote denial: "we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council. We found that this information does not provide a basis for changing the Administrative Law Judge's decision." (Tr. 1-2).

According to the Hearings, Appeals and Litigation Law Manual ("HALLEX"), the Appeals Council is obliged to address additional evidence or legal arguments submitted by a claimant in his request for review. *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) (citing HALLEX § I-3-501). In 1995, however, the Executive Director of the Office of Appellate Operations suspended "the requirement for a detailed discussion of additional evidence and for

specific responses to contentions in denial notices." *See* HALLEX, § I-3-5-90, http://www.ssa.gov/OP_Home/hallex/I-03/I-3-5-90.html. There is no indication that the suspension has been lifted.

Moreover, in the Fifth Circuit, evidence submitted by a claimant to the Appeals Council does not per se require remand to the Commissioner simply because the Appeals Council failed to address the evidence in its decision. *See Higginbotham v. Barnhart* 405 F.3d 332 (5th Cir. 2005); *Higginbotham v. Barnhart*, 163 Fed. Appx. 279, 2006 WL 166284 (5th Cir. 1/10/2006) (unpubl.) ("*Higginbotham II*").[7] Rather, the evidence constitutes part of the instant record and provides a basis for remand so long as it is new, material, and related to the period before the ALJ's decision. *See Higginbotham, supra*; 20 C.F.R. § 404.970(b).[8]

The new evidence principally consists of an October 4, 2010, medical statement completed by D.L.W.'s nurse practitioner, Terri Sylvestri. (Tr. 208-209). Sylvestri checked boxes on an attorney-supplied form indicating that D.L.W. suffered marked limitations of functioning in every domain, save for the domain of attending and completing tasks, which she checked as moderate. (Tr. 208-209).

Assuming that this evidence pertains to the relevant period, the court is not persuaded that

---

[7] Despite the presence of new evidence in *Higginbotham*, the panel on subsequent appeal upheld the district court's decision to affirm the Commissioner's denial of benefits. *Higginbotham II*. The panel itself discounted a diagnosis of disability by claimant's treating physician as conclusory and unsupported. *Id*.

[8] *Higginbotham* cited *Perez v. Chater*, and *Wilkins v. Sec'y Dept. of Health Human Servs.* as support for its finding that post-ALJ evidence is to be considered part of the record. *See Higginbotham*, 405 F.3d at fn. 3 (*citing inter alia*, *Perez v. Chater*, 77 F.3d 41, 44–45 (2d Cir.1996) and *Wilkins v. Sec'y, Dept. of Health Human Servs.*, 953 F.2d 93, 96 (4th Cir.1991) (*en banc*)). Both *Perez* and *Wilkins* require that the subsequent evidence be new, material and relevant to the pre-ALJ decisional period. *Perez, supra*; *Wilkins, supra* (citing, 20 C.F.R. § 404.970(b)).

it is otherwise is material, *i.e.*, relevant, probative, and reasonably likely to have changed the outcome of the Commissioner's determination. *See Pierre v. Sullivan,* 884 F.2d 799, 803 (5th Cir. 1989).[9] As a nurse practitioner, Sylvestri is not considered an "acceptable" medical source under the regulations. *See* SSR 06-03p; 20 C.F.R. § 404.1513(d) & 416.913(d). Moreover, only "acceptable medical sources" can provide "medical opinions" to show the severity of a claimant's impairment and how it affects her functional ability. 20 C.F.R. § 1527(a)(2) & 416.927(a)(2). Although the Commissioner is required to consider evidence from "other sources" when evaluating an "acceptable medical source's" opinion, "the fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because, . . . 'acceptable medical sources' 'are the most qualified health care professionals.'" SSR 06-03p.[10]

By holding that the new evidence did not provide grounds for changing the ALJ's decision, the Appeals Council here implicitly assigned greatest weight to the findings of the non-examining agency psychologist, and acceptable medical source, Dr. Doolin. Moreover, the probative value of Sylvestri's statement is substantially undermined by her impression that D.L.W. suffers marked limitations in domains such as health and well-being and moving and

---

[9] The Fifth Circuit has approved the courts' practice of assigning reasons for discounting the significance of evidence that was submitted to the Appeals Council in the first instance. *See e.g.*, *Higginbotham II, supra*; *Garth v. Astrue*, 393 F. App'x 196, 199 (5th Cir. Aug. 26, 2010) (unpubl.).

[10] *See also, Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991) (recognizing that the regulations accord less weight to other sources such as chiropractors than to medical doctors).

manipulating objects when the record otherwise uniformly reflects that he has no limitations at all in these domains. *See e.g.*, Tr. 128, 203. Finally, the court notes that Sylvestri's October 4, 2010, is inconsistent with her own treatment notes.[11]

## Conclusion

The ALJ in this case was tasked with determining whether plaintiff was disabled. In so doing, he considered the hearing testimony, the school and medical records, and expert opinion evidence. The evidence was not uniform, and according to plaintiff, should have compelled a different result. However, conflicts in the evidence are for the Commissioner to resolve. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted). This court may not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000).[12] That is not to say that the ALJ's decision is blemish-free, but procedural perfection in the administrative process is not required, and any errors do not undermine confidence in the decision.

---

[11] For example, on March 4, 2008, Sylvestri noted that D.L.W.'s grades and conduct were "ok" on his medication. (Tr. 178).

[12] Admittedly, this court has expanded upon some of the reasoning given by the Commissioner for his decision. Generally, courts "only may affirm an agency decision on the basis of the rationale it advanced below." *January v. Astrue*, No. 10-30345, 2010 WL 4386754 (5th Cir. Nov. 5, 2010) (citation omitted). One exception to this rule, however, is harmless error, i.e. absent the alleged error or omission, there is "no realistic possibility" that the ALJ would have reached a different result. *Id.* This exception is applicable here. Further, the Fifth Circuit implicitly has sanctioned the federal courts' practice of assigning independent reasons for discounting newly adduced evidence. *See e.g., Foster v. Astrue*, 2011 WL 480036 (5th Cir. Feb. 10, 2011) (unpubl.); *Garth v. Astrue*, 393 Fed. Appx. 196 (5th Cir. Aug. 26, 2010) (unpubl.).

For the above-assigned reasons, the undersigned finds that the ALJ's conclusion that D.L.W. is not eligible for benefits because his impairments do not meet, equal, or functionally equal any impairment in Appendix 1 to Subpart P of Social Security Administration Regulations No. 4 is supported by substantial evidence and is free of legal error. Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision be **AFFIRMED**, in its entirety, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 10th day of December 2012.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE